KAHN A. SCOLNICK, SBN 228686
 kscolnick@gibsondunn.com
HEATHER L. RICHARDSON, SBN 246517
 hrichardson@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
 pfuster@gibsondunn.com
GILLIAN B. MILLER, SBN 337338
 gmiller@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

*Attorneys for Defendants*
*UnitedHealth Group Inc. and*
*UnitedHealthcare, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF BIBI AHMAD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP INC., UNITED HEALTHCARE INC., and DOES 1-5, inclusive,<br><br>Defendants. | CASE NO. 8:23-CV-02303-MRA-DFM<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br>*[(Proposed) Order filed concurrently herewith]*<br><br>**Hearing:**<br>Date:     June 13, 2024<br>Time:     1:30 p.m.<br>Place:    Courtroom 10B<br>Judge:   Hon. Mónica Ramírez Almadani |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT** on June 13, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Mónica Ramírez Almadani of the United States District Court for the Central District of California in the First Street Courthouse, 350 W. First Street, Courtroom 10B, Los Angeles, CA 90012, Defendants UnitedHealth Group Inc. ("UHG") and UnitedHealthcare, Inc. ("United") will and do move this Court for an order dismissing the Complaint of Plaintiff the Estate of Bibi Ahmad (the "Estate") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Estate has failed to state a claim for relief.*

The Estate's Complaint fails as a matter of law because the Medicare Act preempts all of the Estate's claims.  The Estate also has not particularly pleaded its claims, lacks standing to seek prospective relief, pleads unjust enrichment as a non-cognizable claim, does not allege an economic injury, did not give notice of the alleged defects, pleads unjust enrichment as a non-cognizable claim, and does not allege a viable theory of corporate liability to hold UHG liable.

Regrettably, this motion is not being made following a conference of counsel pursuant to Local Rule 7-3.  Defendants' counsel made numerous attempts (starting on February 23, and continuing during the week of February 26) to arrange for a thorough discussion of the substance of this motion, offering multiple options for either a videoconference or a telephone call.  Plaintiff's counsel ultimately refused to have that discussion, and insisted instead that the parties confer only "by email," notwithstanding this Court's guidance that "[l]etters and e-mail between counsel are insufficient to satisfy" Local Rule 7-3.  *https://www.cacd.uscourts.gov/honorable-mónica-ramírez-almadani*.  And when Defendants' counsel asked what specific information Plaintiff's counsel would like included in that email, Plaintiff's counsel never responded.

---

\* Judge Carney initially set this motion for a hearing on June 10, 2024.  Dkt. 13. Defendants have noticed the motion for the Thursday of the same week in accordance with the Court's law and motion schedule.

1    This motion is based on this Notice of Motion and Motion, the accompanying

2 Memorandum of Points and Authorities, any other matters of which the Court may take

3 judicial notice, other documents on file in this action, and any oral argument of counsel.

4 Dated:  March 11, 2024

5          GIBSON, DUNN & CRUTCHER LLP

6

7         By:   */s/ Kahn A. Scolnick*

8            Kahn A. Scolnick

9         *Attorneys for Defendants UnitedHealth Group*

10        *Inc. and UnitedHealthcare, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1
2

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 3

    I.     Medicare Part C and its express preemption provision. .......................... 3

    II.    Factual background. .................................................................................. 4

    III.   Procedural history. .................................................................................... 6

LEGAL STANDARD ............................................................................................ 6

ARGUMENT .......................................................................................................... 7

    I.     The Complaint should be dismissed because the Medicare Act preempts the claims in this case. ..................................................................... 7

          A.    Medicare Part C expressly preempts the claims because they overlap with Part C standards governing marketing, benefits, and enrollment. ........................................................................... 7

               1.     The Estate's claims overlap with Medicare Part C's extensive regulations for the marketing of MA plans. .......... 8

               2.     The Estate's claims depend on other Medicare Part C statutory provisions and regulations. ................................. 14

          B.    Medicare Part C also impliedly preempts the Estate's claims. ..... 15

    II.    The Estate has not stated a viable claim for additional reasons. .............. 17

          A.    The Estate has not satisfied Rule 9(b)'s pleading standard. .......... 17

          B.    The Estate lacks Article III standing to pursue injunctive relief and declaratory relief. ....................................................... 18

          C.    The Complaint does not allege an economic harm that could support FAL and UCL claims or unjust enrichment. ................... 19

          D.    The Estate did not follow proper notification procedures for the CLRA and breach-of-warranty claims. ................................... 20

          E.    The Estate does not plead a viable theory against United's parent company, UHG. .............................................................. 21

CONCLUSION....................................................................................................... 21

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

1

# TABLE OF AUTHORITIES

2

<u>Page(s)</u>

3

**Cases**

4

*Arizona v. United States*,
  567 U.S. 387 (2012)................................................................. 16

5

6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................. 6, 7

7

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ................................................... 20

8

9

*Aylward v. SelectHealth, Inc.*,
  35 F.4th 673 (9th Cir. 2022) ........................................ 2, 3, 4, 8

10

*Becerra v. Empire Health Foundation*,
  597 U.S. 424 (2022)............................................................ 9, 16

11

12

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007)................................................................. 6, 7

13

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ................................................ 18

14

15

*California Advocates for Nursing Home Reform, Inc. v. Chapman*,
  2013 WL 5946940 (N.D. Cal. Nov. 5, 2013) .......................... 19

16

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) ................................................... 17

17

18

*Do Sung Uhm v. Humana, Inc.*,
  620 F.3d 1134 (9th Cir. 2010) ............................... 2, 4, 8, 13, 14

19

*Forsyth v. Humana, Inc.*,
  114 F.3d 1467 (9th Cir. 1997) ................................................. 16

20

21

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000)................................................................. 15

22

*Hines v. Davidowitz*,
  312 U.S. 52 (1941)................................................................... 15

23

24

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................... 17, 18

25

*Khanna v. Inter-Con Security Sys., Inc.*,
  2009 WL 10730978 (E.D. Cal. Nov. 12, 2009) ...................... 19

26

27

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004)................................................................... 6

28

Gibson, Dunn &
Crutcher LLP

1
2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

*Kwan v. SanMedica Int'l,*
854 F.3d 1088 (9th Cir. 2017) ..................................................................... 7

4

*Kwikset Corp. v. Superior Court,*
51 Cal. 4th 310 (2011) ......................................................................... 19, 20

5

6

*Matthews v. Leavitt,*
452 F.3d 145 (2d Cir. 2006) ........................................................................ 4

7
8

*Merck Sharp & Dohme Corp. v. Albrecht,*
139 S. Ct. 1668 (2019) .............................................................................. 16

9

*Neilson v. Union Bank of California, N.A.,*
290 F. Supp. 2d 1101 (C.D. Cal. 2003) ..................................................... 21

10

11

*Orichian v. BMW of N. Am., LLC,*
226 Cal. App. 4th 1322 (2014) .................................................................. 20

12

*Phillips v. Kaiser Foundation Health Plan, Inc.,*
953 F. Supp. 2d 1078 (N.D. Cal. 2011) ..................................................... 14

13

14

*Quishenberry v. UnitedHealthCare, Inc.,*
14 Cal. 5th 1057 (2023) .............................................................................. 8

15

*Sonora Diamond Corp. v. Superior Court,*
83 Cal. App. 4th 523 (2000) ...................................................................... 21

16

17

*Sprietsma v. Mercury Marine,*
537 U.S. 51 (2002) .................................................................................... 15

18

*Sweaney v. Ada County,*
119 F.3d 1385 (9th Cir. 1997) ................................................................... 17

19

20

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) .................................................................................. 19

21

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047 (9th Cir. 2011) ..................................................................... 7

22

23

*United States v. Bestfoods,*
524 U.S. 51 (1998) .................................................................................... 21

24

*Warth v. Seldin,*
422 U.S. 490 (1975) .................................................................................... 6

25

26

*Wehlage v. EmpRes Healthcare Inc.,*
2012 WL 380364 (N.D. Cal. Feb. 6, 2012) ............................................... 20

27

**Constitutional Provisions**

28

U.S. Const. Art. VI, cl. 2 ............................................................................ 7

1

## TABLE OF AUTHORITIES
(continued)

2

Page(s)

3

**Statutes**

4

42 U.S.C. §§ 1395c–1395i-6 ...................................................................................... 3

5

42 U.S.C. §§ 1395j–1395w-6 ..................................................................................... 3

6

42 U.S.C. §§ 1395w-21–1395w-28 ............................................................................ 3

7

42 U.S.C. § 1395w-21(d) .......................................................................................... 11

8

42 U.S.C. § 1395w-21(e)(2)(G)(iv) .......................................................................... 11

9

42 U.S.C. § 1395w-21(e)(4)(C)(ii) ........................................................................... 13

10

42 U.S.C. § 1395w-21(e)–(g) .................................................................................... 15

11

42 U.S.C. § 1395w-21(h)(1) ....................................................................................... 9

12

42 U.S.C. § 1395w-21(h)(1)–(h)-(5) .......................................................................... 9

13

42 U.S.C. § 1395w-21(h)(2) ....................................................................................... 9

14

42 U.S.C. § 1395w-21(h)(4) ....................................................................................... 9

15

42 U.S.C. § 1395w-21(h)(4)(C) ................................................................................ 11

16

42 U.S.C. § 1395w-21(j)(1)(A) ................................................................................. 11

17

42 U.S.C. § 1395w-22(a) ...................................................................................... 4, 14

18

42 U.S.C. § 1395w-22(c)(1) ................................................................................ 11, 12

19

42 U.S.C. § 1395w-22(c)(2) ...................................................................................... 12

20

42 U.S.C. § 1395w-23(a)(3)(A) .................................................................................. 4

21

42 U.S.C. § 1395w-25(b) .......................................................................................... 16

22

42 U.S.C. § 1395w-26(b)(1) ....................................................................................... 4

23

42 U.S.C. § 1395w-26(b)(3) ....................................................................... 1, 2, 4, 7, 8

24

42 U.S.C. § 1395w-27(g) .......................................................................................... 13

25

Balanced Budget Act of 1997, Pub. L. 105-33, § 4001,
    111 Stat. 317 ......................................................................................................... 4

26

Cal. Bus. & Prof. Code § 17204 .............................................................................. 19

27

Cal. Bus. & Prof. Code § 17535 .............................................................................. 19

28

# TABLE OF AUTHORITIES
(continued)

Page(s)

Cal. Civ. Code §1782(a) ............................................................. 20

Cal. Civ. Code § 1782(d) ............................................................ 20

**Regulations**

42 C.F.R. § 422.50–.74 ............................................................... 15

42 C.F.R. § 422.100 ................................................................... 15

42 C.F.R. § 422.101 ................................................................... 15

42 C.F.R. § 422.138 ................................................................... 15

42 C.F.R. § 422.250 *et seq* ......................................................... 4

42 C.F.R. § 422.326 ................................................................... 14

42 C.F.R. § 422.330 ................................................................... 14

42 C.F.R. § 422.402 ................................................................... 8

42 C.F.R. § 422.560–.626 ............................................................ 15

42 C.F.R. § 422.750–.764 ............................................................ 13

42 C.F.R. § 422.756 ................................................................... 13

42 C.F.R. § 422.2260 .................................................................. 9

42 C.F.R. § 422.2261 .................................................................. 9

42 C.F.R. § 422.2262 .................................................................. 9

42 C.F.R. § 422.2262(a)(1)(iii) ................................................. 10, 11

42 C.F.R. § 422.2262(a)(1)(xi) ................................................... 10

42 C.F.R. § 422.2262(a)(1)(xiv) .................................................. 10

42 C.F.R. § 422.2262(a)(1)(xix) .................................................. 10

42 C.F.R. § 422.2262(a)(2) ......................................................... 10

42 C.F.R. § 422.2263(b)(7) ......................................................... 11

42 C.F.R. § 422.2263(b)(7)(i)(A) ................................................. 11

42 C.F.R. § 422.2267 ................................................................. 12

42 C.F.R. § 422.2267(e)(4) ......................................................... 12

1
2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3   42 C.F.R. § 422.2274 ........................................................................ 12

4   42 C.F.R. § 422.2274(c)(12) ............................................................ 12

5   Establishment of Medicare Advantage Program,
    70 Fed. Reg. 4588 (Jan. 28, 2005) ............................................... 16

6

**Rules**
7
    Fed. R. Civ. P. 8(a)(2) ..................................................................... 18
8
    Fed. R. Civ. P. 9(b) ........................................................................... 7
9

**Other Authorities**
10
    H.R. Conf. Rep. No. 105-217 (1997) ................................................ 4
11
    H.R. Conf. Rep. No. 108-391 (2003) .......................................... 4, 15

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 8:23-CV-02303-MRA

# INTRODUCTION

This case concerns allegedly "misleading Medicare Advantage ('MA') advertising practices." Compl. ¶ 1. A quarter century ago, Congress established the Medicare Advantage program, which allows the federal government to contract with private insurers to administer Medicare benefits on the government's behalf in exchange for fixed payments. That program, contained in Part C of the Medicare Act, requires insurers to cover the same benefits outlined in Medicare Parts A and B and allows insurers to seek approval from the Secretary of Health and Human Services to offer additional benefits. In Congress's view, the Medicare Advantage program expands options for Medicare beneficiaries, spurs innovation in the provision of healthcare services, and helps the federal government control its costs.

The plaintiff in this case, the Estate of Bibi Ahmad, alleges that sales representatives contacted Ms. Ahmad to gauge her interest in enrolling in an MA plan administered by defendant UnitedHealthcare, Inc. ("United"). Although the Estate does not allege that Ms. Ahmad ever enrolled in United's MA plan before she passed away, the Estate alleges that these marketing communications were misleading and caused Ms. Ahmad emotional distress. The Estate also claims that these communications violated a range of California statutes and common-law duties.

This case presents a fundamental issue of preemption—an attempt to use California law to regulate activities that fall under a comprehensive federal statutory scheme. Given its desire to establish Medicare Advantage as a federal program governed exclusively by federal rules, Congress provided that "standards established under this part [Part C of Medicare] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b)(3). The Ninth Circuit has recently and repeatedly recognized that this express preemption provision broadly covers state-law claims of whatever stripe, so long as they overlap with federal standards contained in Part C and its implementing regulations. *See*

Gibson, Dunn & Crutcher LLP

*Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 680–81 (9th Cir. 2022); *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1149–57 (9th Cir. 2010).

Here, Medicare Part C preempts the Estate's claims, all of which concern the marketing of United's MA plans.  Part C governs marketing and related communications from start to finish—it requires the Centers for Medicare & Medicaid Services ("CMS") to approve communications, imposes general standards for misrepresentations and specific rules about comparisons to government-administered Medicare, details how MA organizations supervise their agents, prescribes the disclosures provided at the time of enrollment, and imposes back-end sanctions for any violations of Part C's statutory provisions and implementing regulations.  In the language of the statute, these marketing standards "supersede *any* State law or regulation . . . with respect to MA plans which are offered by MA organizations," such as United.  42 U.S.C. § 1395w-26(b)(3) (emphasis added).  The Estate therefore cannot bring claims under California law that overlap with federal standards applied by CMS.

This Court need not break any new ground in dismissing the Estate's claims.  The Ninth Circuit in *Uhm* affirmed the dismissal of materially identical claims alleging that "written and oral statements were misleading" because those state-law claims invaded territory reserved for CMS, the expert federal agency that regulates, polices, and approves marketing materials.  620 F.3d at 1157.  In *Uhm*, the Ninth Circuit remarked that the marketing-based claims would "directly undermine CMS's prior determination that those materials were not misleading and in turn undermine CMS's ability to create its own standards for what constitutes 'misleading' information about Medicare Part D," the prescription-drug program that incorporates Part C's preemption provision.  *Id.*  The Estate's claims present the same risks and fall within the express preemption provision for the same reasons.

Apart from preemption, the Estate also fails to state a viable claim for several other reasons.  *First*, the Estate has not met Rule 9(b)'s stringent pleading requirements, which apply here because the claims concern allegedly misleading statements.  *Second*,

2

the Estate lacks Article III standing to pursue injunctive and declaratory relief because any prospective remedy could not possibly redress any injury to Ms. Ahmad since her passing. *Third*, the Complaint does not allege an economic injury that could sustain claims under the False Advertising Law and Unfair Competition Law or an unjust-enrichment remedy. *Fourth*, the claims under the Consumers Legal Remedies Act for breach of an express warranty also fail because the Estate does not allege that it or Ms. Ahmad followed the proper procedures for notifying United of any alleged violations before filing suit. *Fifth*, the Estate has not identified a viable legal basis to impose liability against Defendant UnitedHealth Group, Inc. ("UHG"), which is merely a holding company.

In the end, though, the cleanest and clearest ground for dismissal is express preemption under Medicare. This Court should apply *Uhm* and dismiss the complaint without leave to amend.

## BACKGROUND

### I.   Medicare Part C and its express preemption provision.

Medicare delivers healthcare benefits to aged and disabled Americans. Part A automatically insures them for inpatient treatment and other hospital services. *See* 42 U.S.C. §§ 1395c–1395i-6. Part B is a voluntary program that provides supplemental insurance coverage to Medicare enrollees for other medically necessary services and preventive services. *See* §§ 1395j–1395w-6.

In 1997, Congress established Medicare Part C—previously called "Medicare+Choice" and now called "Medicare Advantage" (or "MA")—which allows the federal government to contract with private entities to administer Medicare benefits. 42 U.S.C. §§ 1395w-21–1395w-28. Medicare beneficiaries then have the option to "enroll in an MA plan and receive Medicare benefits through private MA organizations instead of the government." *Aylward*, 35 F.4th at 675. Congress believed that Part C would "allow beneficiaries to have access to a wide array of private health plan choices" and "enable the Medicare program to utilize innovations that have helped the private

market contain costs and expand health care delivery options." H.R. Conf. Rep. No. 105-217, at 585 (1997).

Federal law governs nearly every aspect of the Medicare Advantage program. The Secretary of Health and Human Services has delegated administration of this program to CMS. *Aylward*, 35 F.4th at 675. MA organizations must cover at least the same services as Medicare-eligible individuals would receive through traditional Medicare under Parts A and B. 42 U.S.C. § 1395w-22(a). MA organizations also can offer additional benefits, such as dental and vision coverage, but only subject to the approval of the Secretary. § 1395w-23(a)(3)(A). In exchange for stepping into the shoes of the federal government, the MA organization receives a monthly fixed fee per enrollee (called a capitated payment) from CMS. *See Matthews v. Leavitt*, 452 F.3d 145, 146 n.1 (2d Cir. 2006). CMS approves MA plans through a process of bidding and negotiation. 42 C.F.R. § 422.250 *et seq*. And given the importance of the federal function delegated to MA organizations, CMS has broad authority to regulate MA plans and MA organizations. *See* 42 U.S.C. § 1395w-26(b)(1).

Congress has protected this regulatory scheme since the inception of Medicare Part C with an express preemption provision. *See* Balanced Budget Act of 1997, Pub. L. 105-33, § 4001, 111 Stat. 317. In 2003, Congress considerably broadened the scope of preemption to make clear that "the MA program is a federal program operated under Federal rules. State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." *Uhm*, 620 F.3d at 1149 (quoting H.R. Conf. Rep. No. 108-391, at 557 (2003). The current preemption provision states that federal standards "shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations." 42 U.S.C. § 1395w-26(b)(3).

## II.   Factual background.

Defendant United contracts with CMS to provide MA plans to eligible Medicare beneficiaries. Compl. ¶ 79. Defendant UHG is United's parent company. ¶ 46.

Gibson, Dunn & Crutcher LLP

Plaintiff is the Estate of Bibi Ahmad, a now-deceased woman who received Medicare benefits starting in 1997.  Compl. ¶ 153.  Ms. Ahmad allegedly received 24 unsolicited emails about United's MA plans between October 2022 and November 2023.  *Id.*  For simplicity's sake, United will refer to the plaintiff as the Estate.

Ms. Ahmad's family apparently contacted United in December 2022 and spoke with an agent named "Crystal," who told them that Ms. Ahmad "can still use [her] traditional Medicare" after enrolling in an MA plan.  Compl. ¶ 155.  In response to the question "Any restrictions?  Am I giving up my Medicare?", Crystal allegedly told them: "No, no, no . . . it's a secondary insurance"; "It gives you a fallback"; "If you get a Medicare Advantage Plan, we cover your dental, vision, and hearing"; "You're getting more insurance than Medicare"; "You're not losing Medicare Parts A and B"; and "If you are over age 65, you still get both Parts A and B."  *Id.*

The Estate alleges the call was then transferred to another United agent, Anthony Tillman, who asked for Ms. Ahmad's birth date, Medicare number, social security number, and zip code to access the Medicare database and obtain information about the policy and coverage.  Compl. ¶ 156.  In response to their question about whether she would give up Medicare Part A and B, he allegedly told them, "No ma'am!  It includes all of it . . . won't give it up"; "You keep both insurances"; "It adds benefits under drug and adds on Medicare part C"; "They will give you extra benefits like vision, hearing, dental"; and "They provide innovation and 'competition' to give you extra benefits and over the counter and utility benefits, grocery benefits."  *Id.*  Finally, the Estate claims Ms. Ahmad's family asked, "How do I get out of the Medicare Advantage plan?" and he responded: "You can call in last quarter to disenroll"; "You are not giving up your Medi-Medi . . . you're only adding to it—we're adding on to the plan.  The new plan just coordinates your plan—but you don't lose your Medi-Medi.  You still have both to fall back on"; and "You're not disenrolled from Medi-Medi—will still have it."  *Id.*

The Estate does not allege that Ms. Ahmad ever enrolled in Medicare Advantage.  Compl. ¶¶ 153–58.  Nor does she allege that she ever lost her existing Medicare

coverage.  But she allegedly experienced "panic, distress, confusion, and emotional distress" from the marketing communications.  ¶ 158.

The Complaint also includes allegations about "S.J." or "Patient 2"; "D.D." or "Patient 3"; "J.S." or "Patient 4"'; and "G.L." or "Patient 5."  Compl. ¶¶ 159–76.  These individuals are not plaintiffs and do not appear to have any relationship to the Estate or this litigation.  This motion therefore does not address allegations concerning these anonymous nonparties who are not properly before the Court because a plaintiff "'cannot rest his claim to relief on the legal rights or interests of third parties.'"  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

## III.    Procedural history.

The Estate asserts state-law claims against United and its parent company, UHG, under the False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"); the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"); as well as claims for negligent misrepresentation, intentional misrepresentation, unjust enrichment, and breach of express warranty.  Compl. ¶¶ 177–249.  The Estate also seeks to represent a putative nationwide class of people who purchased MA plans from United.  ¶ 55.  Beyond the phone call by Ms. Ahmad's family, the Estate generally alleges that the marketing of United MA plans (among other things) mispresents the benefits covered by the plans, ¶¶ 2, 3, 10, 25, 116, 179, 199; creates a sense of urgency or refers to time-limited discounts, ¶¶ 13, 30, 123, 179, 186, 205; and misleadingly uses a Medicare logo or represents United represents as a "Medicare Plan Expert," ¶¶ 25, 104, 120.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that does not "contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim fails as a matter of law if it (1) lacks a cognizable legal theory or (2) is unsupported by factual allegations sufficient to establish

a cognizable legal theory.  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017).   In satisfying this burden, a plaintiff must provide "more than labels and conclusions," *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678.

The Estate's claims, which sound in fraud, must also satisfy Rule 9(b)'s heightened pleading standard.  Fed. R. Civ. P. 9(b).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (cleaned up).

## ARGUMENT

### I.    The Complaint should be dismissed because the Medicare Act preempts the claims in this case.

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. Art. VI, cl. 2.  Using this constitutional authority, Congress enacted a broad preemption provision, 42 U.S.C. § 1395w-26(b)(3), to protect the Medicare Advantage program against additional, duplicative, or inconsistent regulation under state law.  The Court should dismiss the Complaint in its entirety because: (1) this provision expressly preempts the Estate's claims, each of which rests on state-law duties that are superseded by federal standards governing the MA program; and (2) even apart from express preemption, each of the claims are impliedly preempted as obstacles to the uniform federal scheme for administering and overseeing MA plans.

### A.    Medicare Part C expressly preempts the claims because they overlap with Part C standards governing marketing, benefits, and enrollment.

Congress safeguarded the federal nature of the MA program through an express preemption provision:  "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan

solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b)(3); *see also* 42 C.F.R. § 422.402 (same).  The Ninth Circuit has interpreted this provision to give effect to its broad language.  It preempts not only state-law claims that are "inconsistent with" Part C standards, but also those that "parallel[]," "enforce[]," or "supplement[]" these standards.  *Aylward*, 35 F.4th at 681.  And preemption applies regardless of whether the plaintiff invokes a generally applicable duty, a statutory claim, or the common law.  *Id.*  The only question is whether the plaintiff's state-law claims address a subject already covered by Part C statutory provisions or regulations promulgated by CMS—if so, they are preempted.  *Id.* at 680–81.

The claims in this case overlap with Medicare Part C statutory provisions and regulations that set forth comprehensive marketing and administrative requirements for Medicare Advantage organizations and their agents.  The Estate primarily alleges that United marketed its Medicare Advantage plans in a misleading, deceptive, or unfair manner.  Because Part C standards expressly prescribe marketing requirements for MA organizations and their agents, those standards "supersede" any state-law duty that would impose obligations on MA plans as to that same subject, 42 U.S.C. § 1395w-26(b)(3), as the Ninth Circuit has held for materially identical marketing-based claims, *see Uhm*, 620 F.3d at 1156–57.  Additionally, the Estate's claims overlap with other Medicare Part C standards governing core parts of the MA program, such as benefits and enrollment, which independently establishes express preemption.

### 1. The Estate's claims overlap with Medicare Part C's extensive regulations for the marketing of MA plans.

Each of the Estate's claims seeks to impose California state-law duties on United, an MA organization, that either conflict with or "parallel[], enforce[], or supplement[] express standards established under [Medicare] Part C and its implementing regulation." *Aylward*, 35 F.4th at 681; *see also Quishenberry v. UnitedHealthCare, Inc.*, 14 Cal. 5th

1057, 1061 (2023) (Medicare preempts state-law claims that "incorporate and duplicate standards established under Part C").

The Medicare Act requires that each MA plan "shall conform to fair marketing standards." 42 U.S.C. § 1395w-21(h)(4). CMS has spelled out requirements to ensure that marketing materials and other communications do not "mislead, confuse, or provide materially inaccurate information." 42 C.F.R. § 422.2262. These Part C standards for marketing and communications apply to all of the Estate's allegations. CMS has defined "communications" broadly, such that its regulations cover any "activities and use of materials . . . to provide information to current and prospective enrollees." § 422.2260. CMS has defined "marketing," which must follow all Part C standards for communications, as "communications materials and activities" that (among other things) are intended to "[d]raw a beneficiary's attention to a MA plan or plans" or "[i]nfluence a beneficiary's decision-making process when making a MA plan selection," and include content regarding the "plan's benefits, benefits structure, premiums, or cost sharing" or "[r]ewards and incentives." *Id*.

Congress designed a system where CMS has exclusive authority to apply its regulations governing marketing. CMS reviews all "marketing material" that MA organizations and their agents use. 42 U.S.C. § 1395w-21(h)(1)–(h)(5); 42 C.F.R. § 422.2261 (same). CMS must disapprove or require correction of marketing materials if they are "materially inaccurate or misleading or otherwise make[] a material misrepresentation." 42 U.S.C. § 1395w-21(h)(2). And an insurer offering an MA plan "may not distribute advertising materials to eligible beneficiaries unless the materials are first cleared by HHS," which has delegated such authority to CMS. *Becerra v. Empire Health Foundation*, 597 U.S. 424, 438 (2022) (citing 42 U.S.C. § 1395w-21(h)(1)).

The Estate's core allegation is that United violated California law by advertising its MA plans as *supplements* to government-administered Medicare plans rather than *replacements* that cover the same benefits. The Estate points to several alleged

statements by United's agents, such as that Ms. Ahmad could "still use [her] traditional Medicare" and would not "los[e] Medicare Parts A and B" by enrolling in United's MA plans.  Compl. ¶¶ 155–56; *see also, e.g.*, ¶¶ 179(a)–(b), 186(b), 199, 210–11, 219.  The Estate's attempt to use California law to regulate these statements overlaps with the requirements for marketing and communications under Medicare Part C.  Specifically, CMS has laid out detailed requirements for MA communications and marketing materials, including that they cannot "[i]mply that the plan operates as a supplement to Medicare," 42 C.F.R. § 422.2262(a)(1)(xiv), or "mislead or confuse Medicare beneficiaries" or "misrepresent the MA organization," § 422.2262(a)(1)(iii).  These provisions clearly cover—and therefore supersede—the Estate's state-law claims.

The Estate's other allegations of deceptive marketing likewise overlap with Part C standards.  For example, the Estate alleges that communications from United deceptively appeared as "official communications from Medicare."  Compl. ¶ 153; *see also, e.g.*, ¶¶ 25, 104, 120.  But Part C standards address the "use [of] the Medicare name, CMS logo, and products or information issued by the Federal Government, including the Medicare card, in a misleading way" and any "[c]laim[s] [that MA organizations] are recommended or endorsed by CMS, Medicare, the Secretary, or HHS."  42 C.F.R. § 422.2262(a)(1)(xi), (xix).  The regulations further provide that MA organizations may "[u]se the term 'Medicare-approved' to describe benefits or services," § 422.2262(a)(2), and use the Medicare card image "with authorization from CMS," § 422.2262(a)(1)(xix).

Medicare Part C standards similarly preempt the Estate's allegations that United's marketing materials created a sense of urgency or referred to time-limited discounts or free benefits.  Compl. ¶ 153; *see also, e.g.*, ¶¶ 179(c), 186(c), 205, 211.  CMS has explicitly authorized MA organizations to "[u]se the term 'free' in conjunction with mandatory, supplemental, and preventative benefits provided at a zero cost share for all enrollees."  42 C.F.R. § 422.2262(a)(2).  And Part C standards disallow anything that

(CMS upon its review deems) might "mislead or confuse Medicare beneficiaries." § 422.2262(a)(1)(iii).

The Estate's allegations also run up against Medicare Part C's extensive requirements governing when MA organizations can communicate with beneficiaries and potential enrollees and what information MA organizations and their agents must share with them. *E.g.*, Compl. ¶ 153, 179, 213, 232. For example, neither an MA organization nor its agent can make unsolicited direct contact with prospective enrollees. 42 U.S.C. § 1395w-21(h)(4)(C), (j)(1)(A). Nor can "unsolicited marketing or marketing materials" be sent to potential enrollees during the open enrollment period. § 1395w-21(e)(2)(G)(iv); 42 C.F.R. § 422.2263(b)(7). But MA organizations may market to certain people such as "age-ins" and dual-eligible Medicare and Medicaid beneficiaries during that same period. 42 C.F.R. § 422.2263(b)(7)(i)(A).

Although the Estate does not allege that Ms. Ahmad actually enrolled in an MA plan, Congress prescribes the information that eligible beneficiaries must receive to make an informed choice whether to enroll in an MA plan and the "[d]etailed description[s] of plan provisions" MA organizations must provide. 42 U.S.C. § 1395w-22(c)(1). Specifically, to "promote an active, informed selection" by eligible enrollees, CMS has a statutory duty to "broadly disseminate" information provided by MA organizations about plan options, benefits, cost-sharing, in-network and out-of-network care, premiums, service area, quality and performance, and supplemental benefits. § 1395w-21(d). MA organizations must also disclose a host of information about their plans, including:

- the plan's service area;
- number, mix, and distribution of plan providers,
- out-of-network coverage (if any) provided by the plan,
- coverage of emergency services and locations of physicians and hospitals;
- supplemental benefits and premiums;
- prior authorization or other requirements that could result in nonpayment;

- plan grievance and appeals procedures; and
- a description of the organization's quality improvement program.

§ 1395w-22(c)(1).   In addition, MA organizations must provide, upon request, information about the organization's procedures to control expenditures; information about "the number of grievances, redeterminations, and appeals" and their aggregate dispositions; and descriptions of "the method of compensation of participating physicians." § 1395w-22(c)(2).

The Estate further asserts that United does not disclose material information about its plans. *E.g.*, Compl. ¶ 115, 179, 204.   But the extensive rules governing plan information disclosure preempt such claims.   CMS has developed model materials that MA organizations must provide to beneficiaries or prospective enrollees—these model materials include information on provider and pharmacy directories; premiums, copays, and coinsurance; and emergency and urgent coverage.   42 C.F.R. § 422.2267.   These mandatory materials also include a standardized "Pre-Enrollment checklist" that must be provided or reviewed with an enrollee by phone before enrollment; it references the provider and pharmacy directory, costs to enrollees, plan rules, and the effect on the enrollee's current coverage.   § 422.2267(e)(4).

The Estate's allegations also touch on MA organizations' use and oversight of agents to market their MA plans. *E.g.*, Compl. ¶ 11, 33, 35, 37, 132–36, 185, 217, 234. But Medicare Part C already governs how "an MA organization uses agents and brokers to sell its Medicare plans." 42 C.F.R. § 422.2274.   CMS has prescribed their oversight, compensation, licensing, training, and use of marketing materials. *Id.*   CMS also requires MA organization to supervise their agents and to ensure that "topics regarding beneficiary needs in a health plan choice are fully discussed" before enrollment, including the availability of the beneficiary's current providers and pharmacy in the plan's network, coverage of the beneficiary's current prescriptions, costs of health care services, premiums, benefits, and the beneficiary's specific health care needs. § 422.2274(c)(12).

In addition to requiring that CMS approve all marketing material before use, Congress made CMS the sole enforcer of these Part C standards. Although United categorically denies the substance of the Complaint's allegations, the key here is that if the Estate believes that fraud or misrepresentations have occurred, Congress has identified the proper place to air such concerns: before the expert federal agency. Congress empowered CMS to issue sanctions including civil money penalties; the suspension of plans' marketing activities, enrollment, or Medicare payment; or termination or nonrenewal of organizations' contracts with CMS. 42 U.S.C. § 1395w-27(g); 42 C.F.R. §§ 422.750–.764. If CMS determines that an MA organization has misrepresented or falsified information to CMS or eligible enrollees, CMS must notify the HHS Office of Inspector General, which may independently impose a civil money penalty upon the organization for this conduct. 42 C.F.R. § 422.756. In fact, the Complaint highlights CMS's enforcement role in this context, noting that CMS has taken "compliance and enforcement actions for inappropriate marketing against at least 73 organizations that sponsored MA plans." Compl. ¶ 106. Congress also gave a remedy to enrollees who believe they have been misled: CMS provides special election periods to switch plans if they enrolled based on "material[] misrepresent[ations]" in plan marketing. 42 U.S.C. § 1395w-21(e)(4)(C)(ii). Thus, applying preemption to the Estate's claims does not leave a loophole for fraud or misrepresentation in the marketing of MA plans.

Any or all of these overlapping regulations mandate that Medicare preempts the claims as a matter of law, which follows from Ninth Circuit precedent applying Medicare preemption under materially identical circumstances. In *Uhm*, the plaintiffs alleged that a Medicare Part D organization had distributed misleading marketing materials. 620 F.3d at 1138–39. The Ninth Circuit observed that "Medicare Part D incorporates the express preemption provision contained in Part C"—the same provision at issue in this case. *Id.* at 1148. The Ninth Circuit then held that, because "CMS must approve all [prescription drug plan] marketing materials before they are made available

13

to Medicare beneficiaries," plaintiffs cannot bring state-law claims that "could potentially undermine the Act's standards as to what constitutes non-misleading marketing." *Id.* at 1150–52. District courts have since applied *Uhm* to Part C marketing materials. *E.g.*, *Phillips v. Kaiser Foundation Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1089–90 (N.D. Cal. 2011). And here, as there, the state-law claims are preempted because "a court would necessarily need to determine whether the written and oral statements were misleading" in the course of deciding the claims. *Uhm*, 620 F.3d at 1157. *Uhm* is directly on point, and there is no basis to reach a different result here.

### 2. The Estate's claims depend on other Medicare Part C statutory provisions and regulations.

The Estate's claims also overlap with other Medicare Part C standards governing core parts of the MA program, including benefits and enrollment. In fact, the Complaint repeatedly refers to Part C statutory provisions and regulations to establish the duties that United allegedly violated. *See, e.g.*, Compl. ¶¶ 78–82. United's administration of MA plans appears to be irrelevant to the Estate's marketing claims, particularly because the Complaint never alleges that Ms. Ahmad enrolled in an MA plan. *See* ¶¶ 153–58. But to the extent the truth or falsity of the representations to Ms. Ahmad depends on how United administers its MA plans, this Court would need to rely on Part C regulations to assess whether United properly administered these essential parts of the MA program.

- *Benefits.* The Estate alleges that Ms. Ahmad, had she enrolled in a United MA plan, would have lost her "OM [Original Medicare] benefits." Compl. ¶ 157. The Estate also alleges more broadly that United misleadingly states that its plans "include[] '*all* the benefits of Original Medicare plus extra benefits.'" ¶ 179(b). Congress has dictated that MA plans must cover the same benefits as original Medicare (that is, Parts A and B) and can cover supplemental benefits only with CMS's permission. 42 U.S.C. § 1395w-22(a).

- *Billing.* The Estate alleges that United engages in a pattern of overbilling by misrepresenting the health level of its members to secure inflated government reimbursement. *See, e.g.*, Compl. ¶¶ 8, 42, 142, 144, 147, 149. CMS comprehensively regulates the reporting and returning of overpayments. *See, e.g.*, 42 C.F.R. §§ 422.326, 422.330.

- *Enrollment.*  The Estate alleges that United provides inaccurate information about enrollment and disenrollment.  *See, e.g.*, Compl. ¶¶ 115, 211.  But Part C standards govern when and how eligible beneficiaries can be enrolled or disenrolled in MA plans.  *See, e.g.*, 42 U.S.C. § 1395w-21(e)–(g); 42 C.F.R. §§ 422.50–.74.

- *Dispute resolution.*  The Estate alleges delay in United's processing of claims and its appeals process.  *See, e.g.*, Compl. ¶¶ 137–44.  Part C establishes the process for coverage determinations and appeals, including review of provider decisions in federal court.  *See, e.g.*, 42 C.F.R. §§ 422.100, 422.101, 422.138, 422.560–.626.

In short, the overlap between the Estate's marketing-based claims and Part C's underlying substantive requirements confirms that § 1395w-26(b)(3) expressly preempts all of the claims.

### B.    Medicare Part C also impliedly preempts the Estate's claims.

If any of the Estate's claims were not expressly preempted for whatever reason, the Medicare Act would at the very least impliedly preempt them.  The existence of an express preemption provision "'does *not* bar the ordinary working of conflict preemption principles,'" including obstacle preemption.  *Sprietsma v. Mercury Marine*, 537 U.S. 51, 65 (2002) (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000)).  In other words, Congress's choice to expressly preempt some state laws does not "create some kind of 'special burden' beyond that inherent in ordinary pre-emption principles" for the implied preemption of other state laws.  *Geier*, 529 U.S. at 870.

Implied preemption applies to any state law that stands as "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  Here, Congress's overriding objective is the administration of the MA program under uniform and exclusive federal rules.  Congress made clear that "State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency."  H.R. Conf. Rep. No. 108-391, at 557.  CMS also has exercised its rulemaking authority in line with this goal of "ensuring that the MA program as a Federal program will operate under Federal rules."

Gibson, Dunn &
Crutcher LLP

Establishment of Medicare Advantage Program, 70 Fed. Reg. 4588, 4664 (Jan. 28, 2005).

The Estate's claims threaten this federal interest in at least three ways.  First, allowing state law to regulate MA marketing materials would interfere with CMS's ability to review and approve such materials in a uniform manner, as Congress envisioned here. *See Arizona v. United States*, 567 U.S. 387, 406 (2012).  Second, and relatedly, United cannot be held liable for failing to deviate from its marketing materials unless CMS would have approved such a deviation. *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).  The Estate asserts a duty for United to change how it discusses plan benefits, enrollment, networks of providers, and its relationship with the Medicare program even though CMS already approved such marketing materials. *E.g.*, Compl. ¶ 115; *see Empire Health*, 597 U.S. at 438.  And third, the Estate takes aim at the MA program itself in challenging the capitated monthly payments system, in which MA organizations receive fixed monthly payments per member, "not conditioned on United providing any services"—thus allegedly providing a "substantial financial incentive" for United not to provide care.  Compl. ¶¶ 82, 96.  But it was Congress that endorsed a capitation model to achieve the perceived benefits of privatized insurance for Medicare beneficiaries, and it was Congress that designed the program in which the MA organizations "assume full financial risk" for the provision of required health care services to beneficiaries.  42 U.S.C. § 1395w-25(b).  In all three of these ways, the Estate's claims are a direct attack on the MA program that Congress designed and enacted into federal law.

*             *             *

The Ninth Circuit has recognized that leave to amend is futile when, as here, federal law preempts a plaintiff's claims as a matter of law. *See, e.g.*, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).  Because Medicare Part C preempts the Estate's claims, "no set of facts can be proved under the amendment to the

Gibson, Dunn & Crutcher LLP

pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997). The Court should dismiss the Estate's Complaint with prejudice because Medicare preempts all of the claims.

## II.    The Estate has not stated a viable claim for additional reasons.

Although preemption is the clearest ground to dispose of the entire Complaint, there are a host of other independent defects. Some cut across all of the claims, and others are specific to particular counts. This Court therefore should dismiss the Complaint regardless of Medicare preemption.

### A.    The Estate has not satisfied Rule 9(b)'s pleading standard.

Rule 9(b)'s stringent pleading standard applies whenever claims "sound in fraud," regardless of whether the cause of action carries the label of fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). This heightened standard applies not only to allegedly deceptive statements, but also to a "course of conduct." *Id.* at 1126. To pursue such a claim, a plaintiff must identify "'the who, what, when, where, and how'" of the misrepresentations or deceptive course of conduct. *Id*. at 1124 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Rule 9(b) applies here. Each claim turns on allegations that United made false and misleading statements to Ms. Ahmad and her family. *See* Compl. ¶¶ 179–82, 186, 199–203, 209–14, 217–20, 230. These claims sound in fraud: The word "fraud" and its derivatives appear 11 times in the Estate's Complaint; the word "false" and its derivatives appear 50 times; the word "misleading" appears 62 times; and the word "deceptive" appears 62 times. The Estate also alleges United had a "strategy of diverting vulnerable beneficiaries out of the government-funded Original Medicare ('OM') and Medicaid programs" into United's MA plans through "deliberately misleading" advertisements, which caused recipients to falsely believe they "are not giving up their OM benefits" when they enroll in an MA plan. ¶¶ 2–8.

Despite the broad course-of-conduct allegations, the Estate has not alleged "the particular circumstances surrounding" the alleged misrepresentations of United's MA

17

Gibson, Dunn & Crutcher LLP

plans.  *Kearns*, 567 F.3d at 1126.  Rule 9(b) requires the Estate to allege with specificity *what* misrepresentations or false statements Ms. Ahmad received.  The Complaint alleges that Ms. Ahmad "received over 24 unsolicited emails from United," which are "documented in the Appendix" to the Complaint.  Compl. ¶ 153.  The Estate does not explain what statements were made in those emails, and no such emails are appended to the Complaint or included in the Estate's belatedly filed appendix, Dkt. 18.  As things stand, United (and the Court) are forced to guess what the emails might say.  This silence falls far short of the requirement that that the alleged misconduct "be 'specific enough to give defendants notice of the *particular* misconduct . . . so that they can defend against the charge.'"  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (emphasis added).

Nor has the Estate pleaded reliance.  The Complaint alleges in conclusory fashion that "Plaintiff and Class Members genuinely relied upon these false and misleading statements in deciding to enroll in United's MA plans," and that "United enrolled Plaintiff and the Class Members, including Patients 2 and 3, in its MA plans through deceptive advertising."  Compl. ¶¶ 182, 230.  But the Complaint conspicuously never says that Ms. Ahmad actually enrolled in a United MA plan.  ¶¶ 153–58.  The absence of any specific allegation of Ms. Ahmad's reliance starkly contrasts with the allegations concerning Patients 2 through 4, ¶¶ 159, 164, 169—nonparties included in the Complaint for seemingly no other reason than to paper over the defects in the claims of the Estate, the only plaintiff in this case, *see supra*, at 6.  Needless to say, allegations about purported representations to or reliance by unnamed nonparties cannot discharge the Estate's burden to demonstrate "that *the pleader* is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).

## B.   The Estate lacks Article III standing to pursue injunctive relief and declaratory relief.

At this stage, Article III standing requires the Estate to plausibly allege "(i) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent;

1   (ii) that the injury was likely caused by the defendant; and (iii) that the injury would

2   likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423

3   (2021).  Standing also "is not dispensed in gross," which means that the Estate "must

4   demonstrate standing for each claim that [it] presses and for each form of relief that [it]

5   seek[s]." *Id.* at 431.

6          The Estate has not established (and cannot establish) Article III standing for

7   injunctive and prospective declaratory relief purportedly to "prevent ongoing and future

8   harm to consumers" and prevent United "from continuing its deceptive advertising and

9   enrollment practices related to its MA plans." Compl. ¶ 251.  An estate (the collection

10  of a decedent's assets) cannot be under threat of future injury from marketing materials

11  about United's MA plans, and prospective relief could not redress any injury to the now-

12  deceased Ms. Ahmad or to her estate.  *See, e.g.*, *California Advocates for Nursing Home*

13  *Reform, Inc. v. Chapman*, 2013 WL 5946940, at *8 n.3 (N.D. Cal. Nov. 5, 2013);

14  *Khanna v. Inter-Con Security Sys., Inc.*, 2009 WL 10730978, at *5 (E.D. Cal. Nov. 12,

15  2009).  The Estate therefore has proved neither a future injury nor redressability, as

16  required to pursue prospective relief.

17       **C.    The Complaint does not allege an economic harm that could support**
          **FAL and UCL claims or unjust enrichment.**
18
19         In addition to satisfying Article III, a plaintiff invoking the FAL (Count I) and the

20  UCL (Count II) must allege statutory standing under California law.  Those claims allow

21  a plaintiff to sue only after "(1) establish[ing] a loss or deprivation of money or property

22  sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show[ing] that the

23  economic injury was the result of, i.e., *caused by*, the unfair business practice or false

24  advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal.

25  4th 310, 322 (2011); *see* Cal. Bus. & Prof. Code § 17204 (UCL); § 17535 (FAL).

26         The Complaint does not allege any economic injury.  Instead, the Estate alleges

27  Ms. Ahmad suffered purely noneconomic injuries:  "panic, distress, confusion, and

28  emotional distress." Compl. ¶ 158.  The Estate nowhere alleges that United caused

Ms. Ahmad to be "deprived of money or property." *Kwikset*, 51 Cal. 4th at 323. That is not surprising, given the absence of any allegation that Ms. Ahmad ever enrolled in a United MA plan. This Court should therefore dismiss Counts I and II for lack of economic injury.

The Complaint also does not state a viable theory of unjust enrichment (Count VI). As an initial matter, California law does not recognize "a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). The Estate also does not allege that Ms. Ahmad conferred any benefit on United that could support "'a quasi-contract claim seeking restitution,'" *id.*, which the Complaint does not even attempt to allege.

### D. The Estate did not follow proper notification procedures for the CLRA and breach-of-warranty claims.

Both the CLRA (Count III) and breach of express warranty (Count VII) require a plaintiff to give notice to defendants before filing suit. A CLRA plaintiff cannot pursue damages (the only remedy for which the Estate has standing) unless the plaintiff, "[t]hirty days or more *prior to* the commencement of an action" "[n]otif[ies] the person alleged" to have committed a CLRA violation. Cal. Civ. Code § 1782(a) (emphasis added); *see* § 1782(d). Similarly, a breach-of-express-warranty claim requires two "essential elements": (1) "the buyer's notice to the seller of . . . a defect within a reasonable time after its discovery" and (2) "the seller's failure to repair the defect in compliance with the warranty." *Orichian v. BMW of N. Am., LLC*, 226 Cal. App. 4th 1322, 1333–34 (2014).

The Estate never alleges that notice was given to United for purposes of the CLRA and the breach-of-express-warranty claims, let alone that United had an opportunity to fix any defect. Such failures to comply with California law require dismissal. *See Wehlage v. EmpRes Healthcare Inc.*, 2012 WL 380364, at *6–8 (N.D. Cal. Feb. 6, 2012) (collecting cases). The Court should dismiss Counts III and VII for this reason.

**E.      The Estate does not plead a viable theory against United's parent company, UHG.**

The Estate brings California-law claims against not only United (the MA organization), but also UHG, which (as the Estate acknowledges) is simply a holding company and parent company to various subsidiaries.  Compl. ¶ 45.  California law adheres to the bedrock principle that "a parent company is presumed to have an existence separate from its subsidiaries."  *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003); *see generally United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998).  The Estate has not alleged that UHG committed any acts that form the basis for the claims.  Nor has the Estate attempted to pierce the corporate veil, much less satisfied the demanding standard for doing so.  *E.g.*, *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538–39 (2000).  Accordingly, the Estate could not proceed against UHG even if the Complaint had stated a claim against United.

## CONCLUSION

The Court should grant the motion to dismiss without leave to amend.

Dated:  March 11, 2024

> GIBSON, DUNN & CRUTCHER LLP
>
>
> By:    */s/ Kahn A. Scolnick*
>            Kahn A. Scolnick
>
> *Attorneys for Defendants UnitedHealth Group Inc. and UnitedHealthcare, Inc.*

Gibson, Dunn & Crutcher LLP

1

## CERTIFICATE OF COMPLIANCE

2   The undersigned, counsel for record for Defendants UnitedHealth Group Inc. and

3 UnitedHealthcare Inc., certifies that this motion contains 6,916 words, excluding the

4 portions exempted by and complying with Local Rule 11-6.1.

5

6 Dated: March 11, 2024

7

8

9         By:   */s/ Kahn A. Scolnick*

10                Kahn A. Scolnick

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 8:23-CV-02303-MRA