KAHN A. SCOLNICK, SBN 228686
kscolnick@gibsondunn.com
HEATHER L. RICHARDSON, SBN 246517
hrichardson@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
pfuster@gibsondunn.com
GILLIAN B. MILLER, SBN 337338
gmiller@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Defendants UnitedHealth Group Inc. and UnitedHealthcare, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ESTATE OF BIBI AHMAD, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNITEDHEALTH GROUP INC., UNITED HEALTHCARE INC., and DOES 1-5, inclusive,

Defendants.

CASE NO. 8:23-CV-02303-MRA-DFM

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

**<u>Hearing</u>:**
Date: TBA
Time: TBA
Place: Courtroom 10B
Judge: Hon. Mónica Ramírez Almadani

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. Plaintiff's ex parte application is a procedurally improper attempt to amend the Complaint. ..... 1

II. Plaintiff's extraneous evidence does not alter the application of preemption to Plaintiff's claims. ..... 2

III. Plaintiff's description of the meet/confer efforts leading up to the ex parte application are misleading. ..... 4

CONCLUSION ..... 6

i

Gibson, Dunn & Crutcher LLP

DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION
CASE NO. 8:23-CV-02303-MRA-DFM

## INTRODUCTION

Plaintiff's ex parte application seeks to offer so-called extrinsic evidence (Defendants' discovery responses) to oppose a pending motion to dismiss. The application is an abuse of this Court's resources and the ex parte procedure. Despite acknowledging that ex parte relief is available only in "genuine emergencies," Plaintiff has sought such relief even though there is no risk of irreparable prejudice and even though the exigency was contrived by Plaintiff's counsel. Plaintiff's Ex Parte Application ("Appl."), Dkt. 27, at 7. At bottom, Plaintiff's application is a procedurally improper attempt to amend its complaint, seeks to inject facts that are irrelevant in any event, and rests atop a misleading factual base. This Court should deny the application.

## ARGUMENT

### I. Plaintiff's ex parte application is a procedurally improper attempt to amend the Complaint.

District courts generally "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). As a result, and as Defendants have already explained once in response to Plaintiff's improper request for judicial notice, plaintiffs cannot oppose a motion to dismiss based on evidence not contained within the complaint's four corners. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see* Dkt. 26 at 1–2.

The rule that a motion to dismiss depends solely on the allegations within the complaint has only two exceptions, neither of which applies here: Defendants' discovery responses were not "properly submitted as part of the complaint," and they are not "matters of public record" that may be judicially noticed. *Lee*, 250 F.3d at 688 (internal quotation marks omitted). Plaintiff suggests that its Complaint incorporated Defendants' discovery responses by reference. Appl. 11. But that argument is nonsensical and temporally impossible: The Complaint was filed six months before the discovery responses came into existence. *Compare* Dkt. 1 *with* Dkt. 27-1 at 12, 24. Nor can the discovery responses be subject to judicial notice—a concept at which Plaintiff

hints but has not properly requested—because Defendants' discovery responses are not matters of public record. Appl. 10–11.

Plaintiff asks this Court to consider "extrinsic evidence" in ruling on the motion to dismiss—*i.e.*, material not contained within the Complaint's four corners. In reality, the ex parte application is an improper attempt to amend the Complaint. *See* Fed. R. Civ. P. 15(a)(2). This Court should deny the application for that reason alone.

**II. Plaintiff's extraneous evidence does not alter the application of preemption to Plaintiff's claims.**

Plaintiff's attempt to amend its pleadings by ex parte application falls flat for the additional reason that the supposed extrinsic evidence makes no difference to the application of preemption. As Defendants explained in the reply in support of their motion to dismiss, the Ninth Circuit has squarely held that affiliates involved in administering private Medicare plans are entitled to invoke the preemption provision.

The Medicare Advantage express preemption provision provides that Part C standards "shall supersede any State law or regulation . . . *with respect to MA plans which are offered by MA organizations* under this part." 42 U.S.C. § 1395w-26(b)(3) (emphasis added). In *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010), the Ninth Circuit interpreted the identical Part D preemption provision, which cross-references § 1395w-26(b)(3) for Medicare prescription drug plans. *Id.* at 1157–58. The Ninth Circuit rejected the plaintiffs' argument that the statute preempted claims against only the Part D organization, not against its corporate affiliates, because the statutory language referencing the organization in the preemption provision "does not shift the locus of preemption" from the Medicare *plan* to the identity of the entity offering it. *Id.* at 1157. What mattered for purposes of Medicare preemption was that the claims against the corporate affiliate were "entirely derivative of its relationship with" the Part D organization and were "directly governed by federal standards." *Id.* at 1157–58. *Uhm* directly controls here: All the claims against Defendants are based on their relationship

with the Medicare Advantage organization and are governed by the federal marketing and communications standards for MA plans. Mot. 7–15, Dkt. 20; Reply 3–6, Dkt. 25.

Plaintiff seems to argue that Defendants previously represented that status as an MA organization was the critical determinant for Medicare preemption. Yet Plaintiff puts quotation marks around language that exists nowhere in Defendants' motion or reply. Appl. 3 ("One of Defendants' core arguments is that they are entitled to the benefit of *'federal preemption' as a "Medicare Advantage Organization"*.") (emphasis and quotation marks in original). True, Defendants' motion to dismiss did not parse the (irrelevant) distinction between MA organization and their affiliates. But that is only because the *Complaint* alleges that "United" (which the Complaint collectively defined to refer to both Defendants) was an MA organization that executed contracts with the Centers for Medicare & Medicaid Services. For example:

> [T]o participate in Medicare Part C, MA organizations must execute a written agreement, or a renewal of the written agreement, with CMS on an annual basis for each of the MA plans they operate. *United executed such agreements or renewals annually for all of the MA plans they operated during the relevant period.*

Compl. ¶ 79 (emphasis added); *see also* ¶ 80 ("By executing these contracts, the United [sic] agreed to comply with CMS's requirements"); ¶ 82 ("United contracts with CMS to receive a fixed capitated monthly payment per MA member"); ¶ 8 (alleging "egregious conduct by United in the administration of its MA plan"); ¶ 59 ("United administers numerous MA plans …").

Defendants, as required, accepted "all allegations of material fact as true" in filing their motion to dismiss. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). Plaintiff now wants to inject a new distinction into the case based on new allegations that were not contained in the Complaint. But that gambit leads to the same destination: The Ninth Circuit's binding precedent in *Uhm* establishes both that CMS's marketing standards preempt state-law claims and also that the scope of preemption extends beyond the MA organization to its affiliates and agents.

**III. Plaintiff's description of the meet/confer efforts leading up to the ex parte application are misleading.**

Defendants feel compelled to set the record straight on two factual matters. First, Plaintiff states that "Opposing counsel did not respond to Plaintiff's meet and confer communications, and efforts to obviate this filing through a party stipulation or joint statement." Appl. 2. Second, Plaintiff's counsel submitted a declaration that purports to describe, with "personal knowledge," the parties' meet-and-confer discussions. *Id.* at 14, ¶¶ 1, 2. These misstatements cannot go uncorrected.

Since the start of this case, Plaintiff's counsel has rebuffed Defendants' efforts to meet and confer on various issues. Scolnick Decl., ¶¶ 3–18, 25, 27–31, Exs., 1–3. We have reminded Plaintiff's counsel multiple times about this Court's Local Rule 7-3, which expresses a preference for "in person" conferences of counsel, but at the very least contemplates a "thorough[]" discussion on a videoconference or telephone call. *Id.*,. ¶¶ 8, 13, 17, Exs., 1–2 . To date, Plaintiff's counsel has declined to make herself available for a single in-person, videoconference, or telephonic discussion about any issue in this case. *Id.*, ¶¶ 3–18, 25, Exs., 1–2.

In advance of filing the motion to dismiss (Dkt. 20), Defendants' counsel tried several times to arrange for a meet and confer over videoconference, but each time, Plaintiff's counsel refused, and insisted instead that any meet and confer discussion must be "over email." Scolnick Decl., ¶¶ 3–18, Ex., 1.

Before filing the motion to stay discovery (Dkt. 22), Defendants' counsel again attempted to meet and confer with Plaintiff's counsel. Eventually, on April 2, Defendants' counsel received a telephone call from "Ally Alain," who said she was "helping" Plaintiff's counsel because of health issues. Scolnick Decl., ¶ 25. Ms. Alain stated that she was an attorney but not affiliated with Plaintiff's counsel's firm, and she has not appeared in this case to date. *Id.* During the April 2 call with Ms. Alain, it was apparent that she knew very little about this case and was just taking notes. *Id.* A few

days after that call, Plaintiff's counsel stated in an email that she would oppose the motion to stay discovery. *Id.*, ¶ 26.

Most recently, on May 22, Defendants' counsel emailed Plaintiff's counsel to set up a Rule 26(f) conference. Scolnick Decl., ¶ 27, Ex., 3. Plaintiff's counsel responded that the parties had already held a "Rule 26(f) conference on April 2, 2024" (*id.*, ¶ 28), which wasn't true. As noted above, the April 2 discussion was solely about Defendants' anticipated motion to stay discovery, and Ms. Alain was unable to discuss anything substantive about our case during that call. *Id.*, ¶ 29. Ultimately, on May 23, Defendants' counsel received another phone call from Ms. Alain (who, again, has not made an appearance in this case and claims not to be affiliated with the firm of Plaintiff's counsel) to address the Rule 26(f) issues. *Id.*, ¶ 30.

Now to Plaintiff's ex parte application: Last Saturday afternoon (May 25), Plaintiff's counsel sent an email suggesting for the very first time that the parties "stipulate to provide the referenced discovery response . . . as extrinsic evidence to the preemption question," and that if Defendants did not agree to that stipulation, Plaintiff "could alternatively file an ex parte application for leave to present the extrinsic evidence." Dkt. 27-1 at 26. Plaintiff's counsel's holiday-weekend email did not say or even suggest that the decision had to be made imminently, other than noting that the "extrinsic evidence" needed to be submitted "prior to the June 13th hearing" on Defendants' motion to dismiss. *Id.*

Because Plaintiff's counsel's email came in on the Saturday of the Memorial Day weekend and did not request an urgent response, Defendants' counsel waited until Tuesday morning, after the holiday, to present the request to their clients. Scolnick Decl., ¶¶ 31, 33. At 8:00 a.m. that Tuesday, May 28, Plaintiff's counsel emailed again to ask about Defendants' position on the request, noting that Plaintiff was preparing an ex parte application to be filed later in the day. Dkt. 27-1 at p. 28.

Curiously, Plaintiff's ex parte application does not include Defendants' response to that Tuesday morning email—on the contrary, the application states that counsel "did

not respond." Dkt. 27 at 2. In reality, a mere *three minutes* later, Defendants' counsel responded that "We received your email on Saturday but since it was a holiday weekend, I haven't had a chance to discuss with my client. I will get back to you asap." Scolnick Decl., ¶ 33, Ex., 3. And as promised, at 4:13 p.m. that same afternoon, Defendants' counsel set forth in detail Defendants' position on why Plaintiff's proposal was procedurally and substantively improper. *Id.*, ¶ 34, Ex., 3. Plaintiff inexplicably omitted all of that from the ex parte application, which was filed the day after these emails were sent.

In short, Plaintiff's statement that "Opposing counsel did not respond to Plaintiff's meet and confer communications" is misleading. Dkt. 27 at 2. The generic text in footnote 1 of Plaintiff's application (*id.*) does not remotely tell the real story. And the representation in Plaintiff's counsel's declaration that she has "personal knowledge" of the parties' meet and confer discussions (*id.*, p. 14, ¶¶ 1, 2) is simply not accurate. Plaintiff's application abuses both the ex parte process and the duty of candor to the Court.

**CONCLUSION**

The Court should deny Plaintiff's ex parte application.

Dated: May 31, 2024

GIBSON, DUNN & CRUTCHER LLP

By: *_/s/ Kahn Scolnick_*
Kahn Scolnick

*Attorneys for Defendants UnitedHealth Group Inc. and UnitedHealthcare, Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel for record for Defendants UnitedHealth Group Inc. and UnitedHealthcare, Inc., certifies that this motion contains 2,071 words, excluding the portions exempted by and complying with Local Rule 11-6.1.

Dated: May 31, 2024

By: *\/s/ Kahn Scolnick*
Kahn Scolnick