KAHN A. SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
HEATHER L. RICHARDSON, SBN 246517
  hrichardson@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
  pfuster@gibsondunn.com
GILLIAN B. MILLER, SBN 337338
  gmiller@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

*Attorneys for Defendants
UnitedHealth Group Inc. and
UnitedHealthcare, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF BIBI AHMAD, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITEDHEALTH GROUP INC., UNITED HEALTHCARE INC., and DOES 1-5, inclusive,<br><br>　　　　　Defendants. | CASE NO. 8:23-CV-02303-MRA-DFM<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEFING ON *LOPER BRIGHT*** <br><br>**Hearing:**<br>Date:　　n/a<br>Time:　　n/a<br>Place:　　Courtroom 10B<br>Judge:　　Hon. Mónica Ramírez Almadani |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 2

    I.    This case has nothing to do with *Chevron* deference. ............................... 2

    II.   *Uhm* controls the outcome of this case. ....................................................... 4

CONCLUSION .................................................................................................... 5

# INTRODUCTION

The Estate's supplemental brief confirms that binding precedent requires dismissal. The Estate argues that the Supreme Court's overruling of *Chevron* deference in *Loper Bright Enterprises v. Raimondo*, 603 U.S. ___, 2024 WL 3208360 (2024), empowers this Court to depart from *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010), which held that Medicare's express preemption provision for Parts C and D (42 U.S.C. § 1395w-26(b)(3)) preempts communication-based common-law claims against affiliates of the topline Medicare organization. The Estate's attempt to escape the binding effect of *Uhm* via *Loper Bright* is flawed twice over.

First, this case has nothing to do with *Chevron* deference—or its demise. The premise of the Estate's argument is that the Ninth Circuit in *Uhm* deferred to a regulatory interpretation of § 1395w-26(b)(3) from the Centers for Medicare & Medicaid Services (CMS), and this supposed regulation expanded preemption to common-law claims and to claims against affiliates of Medicare Advantage (MA) organizations. But the Estate never cites any such regulatory interpretation. Nor does the Estate cite any passage of *Uhm* that purported to defer to CMS under *Chevron*. In fact, there is no such regulation and no such passage from *Uhm*. Instead, the Ninth Circuit followed "the traditional conception of the judicial function" in resting its interpretation in *Uhm* on the plain text of § 1395w-26(b)(3)—the "best reading of the statute," just as *Loper Bright* requires. 2024 WL 3208360, at *16.

Second, the Estate admits that *Uhm* controls the outcome of this case unless *Loper Bright* abrogated the decision. It didn't. The Supreme Court expressly held that its decision to overrule *Chevron* did "not call into question prior cases that relied on the *Chevron* framework," which means specific interpretations remain binding precedent notwithstanding *Loper Bright*. 2024 WL 3208360, at *21. Because the Estate concedes that *Uhm* forecloses its claims, only the Supreme Court or the Ninth Circuit could revisit that interpretation of § 1395w-26(b)(3), even if the Estate were right that the Ninth Circuit had somehow deferred to CMS under *Chevron*.

# ARGUMENT

## I. This case has nothing to do with *Chevron* deference.

The Estate concedes that its claims would be preempted if there were "an express congressional statute explicitly setting forth preemption as to the non-MA[ organization] entities and all laws." Dkt. 48 at 2. That statute already exists; 42 U.S.C. § 1395w-26(b)(3) provides:

> The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

The text of the statute is broad and unqualified—superseding "*any* State law or regulation"—with the only qualifications being carve-outs for licensing and solvency, neither of which are at issue here. 42 U.S.C. § 1395w-26(b)(3) (emphasis added); *see also Uhm*, 620 F.3d at 1153 ("[U]se of the word 'any' 'suggests a broad meaning.'") (quoting *Ali v. Fed. Bureau of Prisons,* 552 U.S. 214, 218–19 (2008)).

The Estate insists that the text of § 1395w-26(b)(3) does not cover common-law claims or claims against affiliates of MA organizations, so CMS then promulgated a regulation expanding preemption, and the Ninth Circuit in *Uhm* then deferred to that regulation under *Chevron*. *See, e.g.*, Dkt. 48 at 4 (citing *Uhm* with no pincite). But none of that is true. Rather, the Ninth Circuit interpreted the plain text of 42 U.S.C. § 1395w-26(b)(3) to foreclose all of the Estate's claims and all of its efforts to avoid preemption. *See Uhm*, 620 F.3d at 1155 (preemption of common law claims); *id.* at 1157 (preemption of claims against affiliates); *see also Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 680–82 (9th Cir. 2022). And in doing so, the Ninth Circuit did not rely on or otherwise mention *Chevron* deference. To the contrary, the Ninth Circuit did precisely what *Loper Bright* envisioned—interpreting a statute to "effectuate the will of Congress" and determining the "best reading of the statute." 2024 WL 3208360, at *14, *16. After all,

Gibson, Dunn & Crutcher LLP

"legal interpretation" is "'the province and duty of the judicial department.'" *Id.* at *21 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)).

The Estate never actually quotes or identifies the supposed regulatory interpretation it says is no longer entitled to *Chevron* deference. The Estate appears to be focusing on the definition of MA organizations in 42 C.F.R. § 422.2, which provides that: "MA organization means a public or private entity organized and licensed by a State as a risk-bearing entity (with the exception of provider-sponsored organizations receiving waivers) that is certified by CMS as meeting the MA contract requirements." But Defendants never invoked this definition in the motion to dismiss, and none of the cases Defendants rely on ever mentioned this definition either. That is, *Uhm*, *Aylward*, and *Quishenberry* never cited to § 422.2 (let alone purported to rely on *Chevron* in deference to it), and *Escarcega* cited § 422.2 only for other definitions in that section. *Uhm*, 620 F.3d 1134; *Aylward*, 35 F.4th 673; *Quishenberry v. UnitedHealthcare, Inc.*, 14 Cal. 5th 1057 (2023); *Escarcega v. Verdugo Vista Operating Co., LP*, 2020 WL 1703181, at *5–6 (C.D. Cal. Apr. 8, 2020) (citing the regulatory definitions of "first-tier" and "downstream" entities). Thus, the Estate is demonstrably wrong when it argues that "[a]bsent *incorrect deference* to CMS's (federal agency) expanded and modified regulation under 42 CFR §422.2, . . . neither *Quishenberry*, *Uhm*, nor *Escarcega* could or would have found preemption." Dkt. 48 at 5.

Moreover, even if the Estate were correct that § 422.2 was an "expanded" definition of an MA organization, that would be entirely irrelevant to any of Defendants' arguments. It was *the Estate* that (wrongly) introduced this regulatory definition into the discussion in the first place, and only to argue that Defendants did not meet that definition. Dkt. 23 at 13. In opposing Defendants' motion to dismiss, the Estate insisted that Defendants did not have a contract with CMS (even though the Complaint alleges that they do (¶ 79)), which means Defendants could not qualify as MA organizations under the regulatory definition, so the Estate's claims against them could not be preempted. *Id.* In response, Defendants explained that the question whether Defendants

met the regulatory definition of an MA organization was a total sideshow under a plain reading of 42 U.S.C. § 1395w-26(b)(3) and binding Ninth Circuit precedent. And now, the Estate's reliance on *Loper Bright* is a straw man squared: the Estate is introducing an irrelevant doctrine to try to defeat *its own* irrelevant argument instead of addressing Defendants' actual arguments or the case law.

The Estate's narrative of CMS overstepping congressional authority to expand the reach of Medicare Part C preemption is also ahistorical. Dkt. 48 at 1, 4. In fact, it was *Congress* that expanded the preemption provision, amending it from initially only superseding state laws respecting "[b]enefit requirements," provider networks, and "[c]overage determinations," Balanced Budget Act of 1997 § 4001, 111 Stat. 319; to now covering "*any* State law or regulation." 42 U.S.C. § 1395w-26(b)(3) (emphasis added). Once again, Congress's expansion of Medicare preemption has no implications for *Chevron* deference or *Loper Bright*.

## II. *Uhm* controls the outcome of this case.

The Estate effectively concedes that *Uhm* forecloses its claims—that is why the Estate is now insisting that *Loper Bright* frees this Court from applying *Uhm*. But even if the Estate were correct that *Uhm* somehow rested on *Chevron* deference, this Court would still be bound by *Uhm*. The Supreme Court in *Loper Bright* expressly clarified that its decision did *not* overrule prior decisions that applied *Chevron*. 2024 WL 3208360, at *21. The Court disavowed the suggestion that *Loper Bright* "call[s] into question prior cases that relied on the *Chevron* framework," as "[t]he holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis*." *Id.* at *21. In arguing that *Loper Bright* has "overturned" *Uhm* (Dkt. 48 at 4), the Estate runs headfirst into that caveat.

Additionally, because the Estate's position requires *Uhm* to be overturned, that is something that only the Ninth Circuit or the Supreme Court could do. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003); *see also Avilez v. Garland*, 69 F.4th 525,

533 (9th Cir. 2023) (explaining that if the Ninth Circuit can apply its precedent "'consistently with that of the higher authority, [it] must do so'").

At bottom, this case presents a straightforward application of a Congressional statute and well-settled *judicial* precedent on preemption.  The Supreme Court's decision in *Loper Bright* on *administrative* interpretation makes absolutely no difference.

## CONCLUSION

The Court should grant Defendants' motion to dismiss with prejudice.

Dated: July 12, 2024

                      GIBSON, DUNN & CRUTCHER LLP

                      By:  */s/ Kahn Scolnick*
                              Kahn Scolnick

                      *Attorneys for Defendants UnitedHealth Group Inc. and UnitedHealthcare, Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel for record for Defendants UnitedHealth Group Inc. and UnitedHealthcare, Inc., certifies that this opposition contains 1,448 words, excluding the portions exempted by and complying with Local Rule 11-6.1.

Dated: July 12, 2024

By:     */s/ Kahn Scolnick*
                  Kahn Scolnick