JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 8:23-cv-02303-MRA-DFM | Date | March 28, 2025 |
|---|---|---|---|
| Title | The Estate of Bibi Ahmad v. UnitedHealth Group Inc. et al. | | |

Present: The Honorable  MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE

| Gabriela Garcia | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING MOTION TO DISMISS [ECF 20] AND DENYING EX PARTE APPLICATION [ECF 27]**

Before the Court are two matters requiring resolution: (1) Defendants' Motion to Dismiss Plaintiff's Complaint (the "Motion") and (2) an Ex Parte Application to bring extrinsic evidence before the Court in support of that Motion. ECF 20; ECF 27. The Court read and considered the moving, opposing, and reply papers, as well as the extrinsic evidence in the Ex Parte Application. The Court also held a hearing on these matters. ECF 33. For the reasons stated herein, the Court **GRANTS** the Motion with prejudice and **DENIES** the Ex Parte Application.

## I. BACKGROUND

Plaintiff Estate of Bibi Ahmad ("Plaintiff" or the "Estate") brings this class action against Defendants UnitedHealth Group, Inc. and United Healthcare, Inc. (collectively "United" or "Defendants") alleging the improper advertising and representation of Medicare Advantage health insurance plans and subsequent unjust enrichment from the same. Plaintiff brings all claims under state law; however, this Court has jurisdiction due to diversity and the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d)(2).

### A. Regulatory Background

Title XVIII of the Social Security Act, popularly known as the Medicare Act, establishes a federally subsidized health insurance program for elderly and disabled persons. 42 U.S.C. §§ 1395 *et seq.* In 1997, Congress enacted Part C of the Medicare Act ("Part C"), which created the Medicare Advantage ("MA") program. 42 U.S.C. §§ 1395w-21–29.[1] Under

---

[1] Medicare is currently divided into four parts: Part A, Hospital Insurance (42 U.S.C. §§ 1395c–1395i); Part B, Medical Insurance (42 U.S.C. §§ 1395j–1395w-5); Part C, Medicare Advantage (42 U.S.C. §§ 1395w-21–1395w-28); and Part D, prescription drug coverage (42

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 8:23-cv-02303-MRA-DFM | Date | March 28, 2025 |
|---|---|---|---|
| Title | The Estate of Bibi Ahmad v. UnitedHealth Group Inc. et al. | | |

Part C, enrollees receive benefits through private insurance companies ("MA Organizations") instead of the government. The Department of Health and Human Services ("HHS") delegates the administration of the MA program to the Center for Medicare and Medicaid Services ("CMS"), a federal agency within HHS.

Pursuant to the MA program, MA Organizations contract with CMS to become eligible health insurance plan providers under Part C. Under these contracts, CMS pays MA Organizations a fixed amount for each enrollee. *See* 42 U.S.C. § 1395w-23(a)(1)(C); 42 C.F.R. § 422.308. In exchange, MA Organizations are required to provide Medicare enrollees with all the benefits and services to which the enrollee would be otherwise entitled under Original Medicare (Medicare Parts A and B). *See* 42 U.S.C. 1395w-22(a)(1)–(3). MA Organizations can sometimes offer additional benefits, such as dental and vision, but these additional benefits are subject to HHS's approval. *See* 42 U.S.C. § 1395w-23(a)(3)(A).

In the CMS regulations mandated by Part C, CMS states that the intent of the regulations is to "establish[] standards and set[] forth the requirements, limitations, and procedures for Medicare services furnished, or paid for, by the Medicare Advantage organizations through Medicare Advantage Plans." 42 C.F.R. § 422(b). These CMS regulations control various aspects of how MA Organizations manage and market their MA Plans. For example, the CMS regulations set forth specific "Medicare Advantage Communication Requirements" which standardize how the MA Plans can be marketed to the public. 42 C.F.R. §§ 422.2260–422.2276. As explained in further detail below, when Congress enacted Part C, it intended for the CMS regulatory standards governing MA plans to supersede at least some aspects of state law that might otherwise impact that domain.[2] *See* 42 U.S.C. § 1395w-26(b)(1)–(3).

B.   **Factual Allegations**[3]

On December 7, 2023, Plaintiff filed a putative class action lawsuit against UnitedHealth

---

U.S.C. §§ 1395w-101–1395w-154). "Original Medicare" consists of Parts A and B and is the federal government's fee-for-service health plan.

[2] Although the parties debate the extent to which the preemption language in Part C supersedes state law, it is undisputed that Congress included this language directing CMS to enact a regulatory scheme that would at least partially supersede state law and preempt some state law claims.

[3] The Court describes the factual background as alleged in Plaintiff's Complaint and in materials incorporated by reference in the Complaint or subject to judicial notice. Fed. R. Civ. Proc. 12(b)(6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 8:23-cv-02303-MRA-DFM | Date | March 28, 2025 |
|---|---|---|---|
| Title | The Estate of Bibi Ahmad v. UnitedHealth Group Inc. et al. | | |

Group Inc. and United Healthcare, as well as five unnamed Doe defendants.[4] ECF 1. In addition to Bibi Ahmad, the Complaint describes four patients (identified by their initials only) who are Medicare enrollees between the ages of 59 and 96 and were allegedly subject to United's misleading advertising and marketing practices regarding MA Plans between 2018 and 2023. *Id.* ¶¶ 153–176. Plaintiff argues that United uses deceptive practices to trick consumers into switching their Medicare coverage plans from Original Medicare to an MA Plan. *Id.* ¶¶ 2, 3. Plaintiff further argues that United misleads consumers into believing that MA Plans are "fallback plans" or an "enhancement" to their Original Medicare benefits, when by switching to an MA Plan, consumers forfeit some Original Medicare benefits. *Id.* ¶¶ 3, 21, 25, 31–32.

Specifically, Plaintiff alleges that United engaged (and continues to engage) in the following misrepresentative and/or illegal behavior regarding the advertisement and sale of their MA Plans:

- United uses "countdown clocks," leading customers to believe that they may lose Medicare benefits if they do not immediately sign up for a United MA Plan;

- United uses misleading imagery so that its advertisements appear to be official government communications;

- United sends multiple marketing emails to potential enrollees to pressure them into enrolling in a United MA Plan;

- United utilizes sales agents[5] who "cash[] in for oversized commissions per enrolled MA beneficiary by taking advantage of loopholes and loosened rules around marketing and enrollment to beneficiaries;"

- United utilizes sales agents who state they cannot discuss MA Plan options with beneficiaries without the beneficiaries' full social security number, name, and birthdate;

---

[4] The putative class includes: "All persons who purchased Medicare Advantage Plan health insurance from Defendants in the United States, including the territories of Guam, and Puerto Rico during the period of four-years prior to the filing of the complaint through the present." ECF 1 ¶ 55.

[5] There is a "lack of stringent oversight" of MA sales agents, which is evidenced by "minimal disciplinary actions" even when there are allegations that agents forged MA enrollment documents. *Id.* ¶ 37

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:23-cv-02303-MRA-DFM | Date | March 28, 2025 |
|---|---|---|---|
| Title | The Estate of Bibi Ahmad v. UnitedHealth Group Inc. et al. | | |

- United inaccurately advertises its relationship to CMS and the Medicare program;

- United inaccurately advertises that United's MA Plan "combines" with Original Medicare as an added plan, not as a replacement;

- United fails to represent that Medicare Advantage requires beneficiaries to relinquish Original Medicare benefits;

- United over-broadly advertises that MA beneficiaries receive "better" benefits than Original Medicare;

- United inaccurately advertises that MA Plans allow beneficiaries to continue seeing the same doctors as they did under Original Medicare;

- United inaccurately advertises that the MA Plan directory of providers is unlimited;

- United incorrectly advertises the MA Plan requirements for prior authorization for services which do not require prior authorization under Original Medicare;

- United fails to advertise the limited availability of vision and dental benefits;

- United fails to disclose that MA Plans often deny care based on insurers' internal determinations, which overrule their physicians' determinations;

- United neglects to transparently explain that beneficiaries are responsible for payments in full if they do not stay within the United MA network and if their claims are denied;

- United inaccurately advertises the deadline for enrollment for dual eligible beneficiaries;

- United inaccurately advertises that disenrollment from Medicare Advantage is simple and reversable—which omits that new medical underwriting would be required for a new Medigap plan;

- United prevents enrollees from knowing they could be eligible for a special enrollment period to obtain better plans;

- United deliberately targets "the most financially constrained" and "highly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 8:23-cv-02303-MRA-DFM | Date | March 28, 2025 |
|---|---|---|---|
| Title | The Estate of Bibi Ahmad v. UnitedHealth Group Inc. et al. | | |

vulnerable populations, including the elderly, disabled, [] those on fixed or marginal incomes. . . [and] the 12 million dual eligible 'Medicare-Medicaid' beneficiaries;" and

- United targets beneficiaries with Alzheimer's disease, dementia, mentally incapacitated individuals, or beneficiaries with limited English proficiency, which results in people enrolling in MA Plans without consent.

*Id.* ¶¶ 10, 13, 19, 25–27, 30–33 85–88, 115–133. Notably, all of Plaintiff's allegations center around United's marketing tactics when selling the MA Plans. The Complaint alleges these tactics are misleading because they convince beneficiaries to enroll in MA Plans for perceived "financial savings, not a 'superior' insurance product."[6] *Id.* ¶¶ 27, 29.

### C. Procedural History

Based on the factual allegations above, Plaintiff brings seven claims for (1) violation of California's False Advertising Law, Cal. Bus. Prof. Code § 17500 *et seq*.; (2) violation of California's Unfair Competition Law, Cal. Bus. Prof. Code § 17200 *et seq*.; (3) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*.; (4) negligent misrepresentation; (5) intentional misrepresentation; (6) unjust enrichment; (7) breach of express warranty; and (8) injunctive and declaratory relief pursuant to California's Unfair Competition Law, Consumer Legal Remedies Act, and False Advertising Law. *See id.* ¶¶ 172–253. Plaintiff seeks equitable relief and monetary damages based on disgorgement of unjust profits, restitution for losses incurred, and surcharges. *Id.* ¶ 43.

On March 11, 2024, United filed the instant Motion to Dismiss. ECF 20. Plaintiff opposed the Motion and United replied. *See* ECF 23; ECF 25. On May 30, 2024, Plaintiff filed its Ex Parte Application requesting that the Court consider extrinsic evidence and information in deciding the instant Motion. ECF 27. On June 13, 2024, the Court held a hearing on the Motion. ECF 33. The Court addresses the admissibility of the evidence, as well as the arguments raised in the moving papers, below. Discovery has been stayed in the case pending resolution of this Motion. *See* ECF 46.

---

[6] For those living on Social Security, Original Medicare premiums for Medicare Part B doctor visits ($174.70/monthly) and Part D prescription drug coverage ($55.50/monthly) "are significant." *Id.* ¶ 29. However, "when patients are actually sick, they overwhelmingly disenroll from [Medicare Advantage] and back into [Original Medicare]—with substantial hardship including new underwriting for their Medicare Supplemental plans." *Id.* ¶ 27.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 8:23-cv-02303-MRA-DFM | Date | March 28, 2025 |
|---|---|---|---|
| Title | The Estate of Bibi Ahmad v. UnitedHealth Group Inc. et al. | | |

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. "On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In other words, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

The Court first addresses the Ex Parte Application and then proceeds to address the Motion.

### A. Ex Parte Application – Admissibility of Extrinsic Evidence

In general, when evaluating a motion to dismiss, courts consider only: (1) the contents of the complaint, (2) any attached exhibits on which the complaint "necessarily relies," and (3) judicially noticed matters of public record. *See United States v. Corinthian Colleges*, 655 F.3d 984, 998–99 (9th Cir. 2011) (citation omitted). Federal Rule of Evidence ("FRE") 201 "permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)–(2)).

Here, Plaintiff seeks to introduce three broad categories of extrinsic evidence. *First*, Plaintiff asks the court to take judicial notice of purported evidence of United's deceptive statements and practices, including website screenshots, a U.S. Senate Committee on Finance Report, and a policy letter from the Center for Medicare Advocacy. ECF 24-2. Because those exhibits contain adjudicative facts that are subject to reasonable dispute, this request is **DENIED**.

*Second*, Plaintiff asks the Court to take judicial notice of Court filings from similar cases, or cases in which United is a party. ECF 24-2. "It is unnecessary to request the court judicially

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:23-cv-02303-MRA-DFM | Date | March 28, 2025 |
|---|---|---|---|
| Title | The Estate of Bibi Ahmad v. UnitedHealth Group Inc. et al. | | |

notice . . . cases from California and federal courts . . . [T]he Court routinely considers such legal authorities in doing its legal analysis without a party requesting they be judicially noticed." *Lucero v. Wong*, No. C 10-1339 SI, 2011 WL 5834963, at *5 (N.D. Cal. Nov. 11, 2001). Accordingly, this request is also **DENIED**.

*Third*, Plaintiff asks the Court to take judicial notice of United's discovery responses which confirm that the specific United Healthcare entities named as defendants in this case are not MA Organizations.[7] ECF 27. "[D]iscovery responses—even party admissions—are inherently subject to reasonable dispute and do not come from 'sources whose accuracy cannot reasonably be questioned.'" *Perez v. DNC Parks & Resorts at Sequoia*, No. 119CV00484DADSAB, 2020 WL 4344911, at *2 (E.D. Cal. July 29, 2020); *see also Huntzinger v. Aqua Lung Am., Inc.*, No. 15CV1146-WQH-AGS, 2018 WL 325024, at *5 (S.D. Cal. Jan. 8, 2018) ("The Court declines to take judicial notice of any discovery responses in this litigation because they are not the proper subject of judicial notice."). Thus, this final request is **DENIED**.

### B. Preemption of State-Law Claims

United argues that Plaintiff's claims should be dismissed because they are preempted by the plain text of the Medicare Act. *See* ECF 20 at 7–17. The Court agrees.

#### 1. *Statutory Interpretation*

"Congress may displace state law through express preemption provisions." *Uhm v. Humana, Inc.*, 620 F.3d 1134, 1148 (9th Cir. 2010) (citing *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) ("Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose."); *see also* U.S. Const. Art. VI, cl. 2. Part C of the Medicare Act contains one such preemption provision. *See* 42 U.S.C. § 1395w-26(b)(3). Part C directs HHS to establish regulations and standards governing MA Organizations and goes on to explain that this regulatory scheme will supersede state law. *See* 42 U.S.C. § 1395w-26(b)(1)–(3). Specifically, the Act states: "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b)(3). In determining which claims are subject to this preemption provision, the Ninth Circuit has looked to congressional intent, particularly amendments Congress made to the Medicare Act in 2003. *See, e.g.*, *Uhm*, 620 F.3d at 1149–50. The Ninth Circuit found that, through these amendments, "Congress intended to broaden the preemptive effects of

---

[7] The Court addresses Plaintiff's substantive argument regarding Defendants' status as a MA Organization in section III(B), *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:23-cv-02303-MRA-DFM | Date | March 28, 2025 |
|---|---|---|---|
| Title | The Estate of Bibi Ahmad v. UnitedHealth Group Inc. et al. | | |

the Medicare statutory regime. . . [by] clarif[ying] that the MA program is a federal program operated under Federal rules[,]" and "State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." *Id.* at 1149 (citing H.R. Rep. No. 108–391 at 557 (2003) (Conf. Rep.)). As explained further below, the Ninth Circuit has interpreted this preemption provision to include not just state law claims that conflict with the federal regulatory scheme, but also state law claims that "parallel[], enforce[], or supplement[] express standards established under Part C and its implementing regulation." *See Aylward v. SelectHealth, Inc.*, 35 F. 4th 673 (2022).

Here, none of Plaintiff's eight state law claims relates to California's licensing laws or plan solvency. Therefore, the plain language of the statute (here, Part C of the Medicare Act), coupled with the Ninth Circuit's binding interpretation of Congress' intent in enacting that statute, supports the finding of preemption.

### 2.    *Ninth Circuit Caselaw*

In its Motion, United relies on two cases in particular: *Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010), and *Aylward v. SelectHealth, Inc.*, 35 F.4th 673 (9th Cir. 2022). These decisions clearly support and require the finding of preemption in this case.

#### a)    *Uhm v. Humana*

In *Uhm*, two plaintiffs (a married couple) brought a putative class action against Humana Health Plan, Inc. and Humana, Inc. (collectively, "Humana"). *Uhm*, 620 F.3d at 1137. In their complaint, the Uhms alleged that they chose Humana as their Part D Medicare provider "based in part on the representations Humana made in its marketing materials." *Id.* at 1138. Although the marketing materials stated that the Uhms could receive coverage for their prescription drugs starting January 1, 2006, "January 1, 2006, came and passed, and the Uhms did not receive the materials necessary for obtaining their drug benefits. [This resulted in the] Uhms [being] forced to buy their prescription medications out-of-pocket at costs higher than those provided by Humana's plan, despite the fact that the [prescription drug plan] premium was deducted from their social security checks in both January and February of that year." *Id.* at 1139. Based on this series of events, the Uhms sued Humana for "breach of contract, violation of several state consumer protection statutes, unjust enrichment, fraud, and fraud in the inducement." *Id.* The district court dismissed the Uhms' complaint "on the ground that their claims [were] preempted by the express preemption provision of the [Medicare Act]." *Id.* at 1137. The district court also dismissed the Uhms' motion for partial reconsideration, in which the Uhms argued that "unlike Humana Health Plan, Inc., Humana, Inc., is not regulated under the [Medicare] Act, and therefore the claims against it cannot be preempted." *Id.* at 1138. The Uhms appealed the district court's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:23-cv-02303-MRA-DFM | Date | March 28, 2025 |
|---|---|---|---|
| Title | The Estate of Bibi Ahmad v. UnitedHealth Group Inc. et al. | | |

decision to the Ninth Circuit.

On appeal, the Ninth Circuit affirmed the lower court's decision, holding that "each of the Uhms' state law claims [was] preempted by the Act's express preemption provision."[8] *Id.* at 1148. The Ninth Circuit reasoned that CMS had already approved the marketing materials that the Uhms were challenging under state law, and, therefore, if the appellate court ruled in favor of the Uhms, it would be "directly undermin[ing] CMS's prior determination that those materials were not misleading and [would] in turn undermine CMS's ability to create its own standards for what constitutes 'misleading' information about Medicare Part D." *Uhm*, 620 F.3d at 1157. The Ninth Circuit also rejected the argument underpinning the Uhms' Motion for Reconsideration, explaining that it did not matter that Humana, Inc. was not a CMS-approved prescription-drug plan sponsor because "the fraud and consumer protection claims against Humana, Inc., are entirely derivative of its relationship with Humana Health Plan, Inc. . . . [because] Humana Inc. participated alongside its subsidiary Humana Health Plan, Inc. in marketing the [relevant prescription drug plans]." *Id.* at 1157.

Here, the same logic applies. The Estate argues that United's marketing material for its MA Plans is intentionally and fraudulently misleading; this is the basis of all of Plaintiff's state law claims. *See generally* ECF 1. However, as was the case in *Uhm*, these claims are preempted because Part C sets up a federal regulatory scheme for all MA Plan marketing materials,[9] and the preemption provision of Part C explicitly states that this regulatory scheme was designed to supersede state law in this domain. *See Uhm*, 620 F.3d at 1157. The Ninth Circuit's interpretation of the preclusive effect of this federal regulatory scheme is binding on this Court, requiring a finding of preemption.

Similarly, for the same reasons the Ninth Circuit explains in *Uhm*, this Court is not persuaded by Plaintiff's argument that its claims are not preempted because UnitedHealth Group Inc. and United Healthcare Inc. are not MA organizations. *See* ECF 27; ECF 40. As a preliminary matter, the Court finds it concerning that Plaintiff does not explicitly and directly make this allegation in its Complaint, and instead raises it via an Ex Parte Application. *See* ECF

---

[8] Although *Uhm* concerned Part D of the Medicare Act, the same preemptive language applies to Part C. *See Uhm*, 620 F.3d at 1149 ("Medicare Part D incorporates the express preemption provision contained in Part C, the Medicare Advantage ("MA") program. . ."); *see also* 42 U.S.C. § 1395w–112(g).

[9] The CMS standards for MA Plan marketing materials are designed to ensure that the marketing materials "are not materially inaccurate or misleading or [do not] otherwise make material misrepresentations." 42 C.F.R. § 422.2264(d); 42 U.S.C. § 1395w-21(h)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:23-cv-02303-MRA-DFM | Date | March 28, 2025 |
|---|---|---|---|
| Title | The Estate of Bibi Ahmad v. UnitedHealth Group Inc. et al. | | |

27. Regardless, at the June 13 hearing, Plaintiff's main argument was that the United defendants named in this lawsuit are not MA Organizations. *See* ECF 33; ECF 40. Accordingly, the Court addresses the merits of that argument in this Order.

Plaintiff argues that the preemption provision in Part C applies only to MA Organizations, and because *these particular* United entities that Plaintiff names in the lawsuit—UnitedHealth Group, Inc. and United Healthcare, Inc.—are not MA Organizations, any actions these named Defendants take regarding the marketing of MA Plans are not governed by CMS[10] and therefore not subject to the preemption provision of Part C. *See* ECF 40; 42 U.S.C. § 1395w-26(b)(3) ("The standards established under this part shall supersede any State law or regulation . . . with respect to MA Plans which are offered by *MA organizations* under this part." (emphasis added)). Plaintiffs make a very careful (and fragile) argument. It is undisputed that there is some United Healthcare entity within the network of that company's many affiliates that is an MA Organization. This must be the case, because if there were no United entity with MA Organization status, then no United entity would be able to provide the MA Plans—status as a MA Organization is a condition to being able to sell these plans under the Medicare Act. *See* 42 U.S.C. § 1395w-23(a)(1)–(3); 42 C.F.R. § 422.308. As a result, Plaintiff argues that the named Defendants are affiliated closely enough with the MA Organization United entity to be involved in the marketing of MA Plans but are also distinct enough from the MA Organization to not be subject to the CMS marketing regulations for MA Plans. However, as the Ninth Circuit explained, because the defendant entities were involved in the marketing and selling of the MA Plans, the claims that plaintiffs brought against them were "entirely derivative of [the defendants'] relationship" with an MA Organization, even if those defendants were not MA Organizations themselves. *Uhm*, 620 F.3d at 1157. It is enough, in other words, that a defendant "participated alongside" an MA Organization in marketing MA Plans, which is conduct "directly governed by federal standards." *Id.* Thus, here, Plaintiff's claims are preempted even if United is not an MA Organization. And, as the Ninth Circuit explained in *Uhm*, the use of the term "MA Organizations" in the preemption provision of Part C exists to "modif[y] or describe[]" what a MA Plan is, but "it does not shift the locus of preemption" from the MA Plan to the MA Organization. *Id.* at 1157. Under the Ninth Circuit's interpretation of the statutory language (which this Court is bound to accept), the fact that the MA Plans are subject to the CMS marketing regulations is sufficient to find Plaintiff's state law claims preempted, regardless of whether the Defendants are MA Organizations.

---

[10] Plaintiff actually states that it will not know whether or not Defendants contracted with CMS until after discovery, but it raises this inference that perhaps CMS never signed off on the marketing materials because of Defendants' non-MA-organization status. *See* ECF 40 at 7–9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 8:23-cv-02303-MRA-DFM | Date | March 28, 2025 |
|---|---|---|---|
| Title | The Estate of Bibi Ahmad v. UnitedHealth Group Inc. et al. | | |

### b) *Aylward v. SelectHealth*

The other Ninth Circuit case United relies on heavily in the Motion, *Aylward v. SelectHealth, Inc.*, confirms that the holding in *Uhm* also applies to plaintiffs bringing claims under Part C (as opposed to Medicare Part D), and that the preemption provision applies not just where state law conflicts with the federal regulations, but also where it "parallels, enforces, or supplements express standards established under Part C . . . ." 35 F.4th 673, 680–81 (9th Cir. 2022).

In *Aylward*, the wife of a patient who died waiting for a lung transplant sued a Medicare Advantage health insurance company, alleging that the insurance company breached its state law duties by failing to timely process her late husband's claim and by failing to properly investigate the claim. *Id.* at 673. The Ninth Circuit held that the express preemption clause in Part C of the Medicare Act preempted the state law claims on both issues. *Id.* at 681–82. The court reasoned that the duty of care expressed in the relevant state statutes did not apply, because those asserted duties (the duties to timely process claims and to conduct adequate investigations) were already expressly dictated in the federal statute and thus were preempted under the corresponding Medicare Part C regulations. *Id.*; *see also Quishenberry v. UnitedHealthcare Inc.*, 14 Cal.5th 1057, 1073 ("UnitedHealthcare and HealthCare Partners' liability therefore hinges on a determination of noncompliance with a duty rooted in federal standards established under Part C.").

Here, for the same reasons the Ninth Circuit explained in *Aylward*, Plaintiff's tort law claims for misrepresentation, unjust enrichment, breach of express warranty, and injunctive relief are similarly preempted, because the duty of care Defendants owed to Plaintiff is the federal duty of care as expressed in the Part C regulations, rather than any state law duty of care.

### C. Leave to Amend

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Although leave to amend should generally be "freely given," *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000), *see also* Fed. Rule Civ. Proc. 15(a), granting amendment is not appropriate where the court determines "that the pleading could not possibly be cured by the allegation of other facts," making any potential amendments futile. *Id.* at 1127 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

As explained above, because all of Plaintiff's claims concern the allegedly misrepresentative nature of Defendants' marketing strategy relating to its MA Plans, and because the regulatory scheme governing the marketing of MA Plans is encompassed in Part C's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | 8:23-cv-02303-MRA-DFM | Date | March 28, 2025 |
|---|---|---|---|
| Title | The Estate of Bibi Ahmad v. UnitedHealth Group Inc. et al. | | |

implementing regulations (which both Congress and the Ninth Circuit have stated supersede any state laws regulating the same), Plaintiff's claims are preempted.   There are no facts that Plaintiff can allege to save these claims: if Plaintiff pleads claims that are not related to the MA Plans, then Plaintiff has no apparent basis to hold Defendants liable, whereas if Plaintiff pleads claims that are related to the MA Plans, those claims are necessarily federally preempted by the language of Part C.  *See Quishenberry*, 14 Cal.5th at 1073 ("UnitedHealthcare and HealthCare Partners' liability therefore hinges on a determination of noncompliance with a duty rooted in federal standards established under Part C.").   Thus, finding all possible amendments futile, leave to amend is **DENIED**.

### IV.     CONCLUSION

This Court does not minimize the seriousness of the allegations in the Complaint or the grave issues in addressing vulnerable populations' access to healthcare.   However, on the question of whether the claims in Plaintiff's Complaint are preempted, the law makes clear that they are.   For the foregoing reasons, the Motion to Dismiss all claims in the Complaint is **GRANTED** with prejudice.   This case is **DISMISSED**.

**IT IS SO ORDERED.**

|  | - : - |
|---|---|
| Initials of Deputy Clerk | gga |